68

The State of Ohio, Appellant, *v.* Thomas, Appellee.

(No. 73-132—Decided November 21, 1973.)

Mr. *John T. Corrigan,* prosecuting attorney, and *Mr. Sumner Canary,* for appellant.
Mr. *James R. Willis,* for appellee.

PAUL W. BROWN, J. We are asked to determine whether the Court of Appeals was correct in its interpretetion and application of R. C. 2945.83, governing the setting aside of a judgment of conviction. For the reasons set forth below, we conclude that the comments made by the trial court raised the possibility that defendant may have

been prejudiced thereby. Therefore, the Court of Appeals did not act improperly in reversing the judgment of conviction.

Appellee assigned as error two comments made by the trial court during cross-examination of the narcotics detectives, relative to the existence of a "deal" made between the prosecution and its principal witness, Fletcher, to bring his cooperation to the attention of the court at the time when his request for probation would be heard. During cross-examination of Detective Zimlich the folllowing exchange occurred:

"Q. So that you do intend to bring his cooperation to the attention of the court?

"A. Yes, sir.

"The Court: * * * So that the jury will understand, that won't be necessary, because it [the probation hearing] is coming before me, and I know whether or not he has cooperated * * *."

Later, during cross-examination of Detective Thompson, this exchange occurred:

"Q. Well, if he is a witness one week and a defendant the next week, his being a witness would be contingent upon his getting a benefit in the case in which he was a defendant?

"A. Well, when you say 'benefit,' when we talk to these people, as far as working for us and instituting cases against other peddlers, we merely state that when their trial comes up for the charges that they have pending, we will merely bring it to the attention of the judge.

"We don't promise them anything. We don't offer them any bargain rates or anything else.

"We just say, 'we will bring it to the attention of the court.'

"The Court: Don't you think you know me well enough to know that they can't make bargains with me, Mr. Willis [counsel for defendant]?"

It is axiomatic that errors of differing degrees of severity may be committed during the course of a trial. In the interest of fairness and judicial finality, every jurisdiction

in this country has a constitutional or statutory provision that errors causing a party no prejudice or deprivation of rights—harmless error—are not to form the basis for reversal or a new trial. The rule in this state is found in R. C. 2945.83:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:

"'* * *

"(C) The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused *was or may have been* prejudiced thereby * * *.'' (Emphasis added.)

The mandatory import of the statute cannot be mistaken. Absent a showing of actual or possible prejudice, a judgment of conviction must be affirmed. The question we must answer, therefore, is whether the Court of Appeals erred in finding in the record such actual or potential prejudice.

It must be noted that no absolute prohibition exists to preclude comment by a court during trial. It must also, however, be borne in mind that "'* * *the influence of the trial judge on the jury is necessarily and properly of great weight * * *.'' *Starr* v. *United States* (1894), 153 U. S. 614, 626.

Fletcher, whose background and character were far from unblemished, was the principal witness for the state. His testimony as to his alleged purchase of the narcotics from the appellee stands in stark contrast to her version of what transpired on the two occasions when Fletcher visited her home. Fletcher's credibility as a witness was central to the state's case; the jury could believe his account, or it could believe appellee's, but not both. To the extent that evidence dealt with Fletcher's motive in offering himself as a witness it was relevant to the jury's determination as to his credibility. It cannot be gainsaid that any implication from the court, however well-intentioned and subtle, that the witness' motive for testifying was not tied to a self-serving "deal" could reasonably be

thought to have bolstered his credibility in the eyes of the jury.

"It is well known, as a matter of judicial notice, that juries are highly sensitive to every utterance by the trial judge, the trial arbiter, and that some comments may be so highly prejudicial that even a strong admonition by the judge to the jury, that they are not bound by the judge's views, will not cure the error." *Bursten* v. *United States* (1968), 395 F. 2d 976, 983.

We cannot deny the possibility that the court's comments bolstered Fletcher's credibility to the prejudice of the defendant, and thus constituted "evidence offered against * * * the accused," and "the accused was or may have been prejudiced thereby," within the meaning of R. C. 2945.83(C). The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'Neill, C. J., Corrigan, Stern, Celebrezze and W. Brown, JJ., concur.

Herbert, J., dissenting. I disagree that the mandatory requisites of R. C. 2945.83 may be so lightly regarded.

That section of our Code does not permit reversal of a judgment of conviction merely because the record raises a "possibility that defendant may have been prejudiced," as the majority opinion states. Nor does the statute allow reversal of such a judgment upon a simple "showing" of possible prejudice. The General Assembly wisely and unambiguously announced that the prejudice complained of must *affirmatively appear* upon the record of the trial, and no test short of that should be adopted by reviewing courts.