JOURNAL ENTRY AND OPINION
Matthew Stedman appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of murdering Shareece Scott. On appeal, he raises eight assignments of error for our consideration. After careful review of the record, we affirm the judgment of the trial court.
The facts of the case are relatively uncomplicated. At approximately one o'clock in the morning of February 5, 1994, on East 83rd Street in Cleveland, Shareece Scott, an alleged prostitute, was shot in the face and killed as she leaned into the passenger side window of a small grey car which had pulled to the curb. Her last words, "What's up, baby?", preceded the fatal gunshot. The murder remained unsolved for more than two years.
In June 1995, Stedman fled when ATF agents arrived at his home to question him on unrelated charges in connection with manufacturing of automatic weapons. At that time, Stedman and Ciobotaru also had been indicted for a separate arson charge.
In November 1996, Alcohol, Tobacco, and Firearms (ATF) agents arrested Andrew Starr in connection with unrelated federal weapon charges. In exchange for leniency in his case, Starr told federal agents that Matthew Stedman had killed Scott, and he agreed to testify against Stedman at trial. In addition, Starr provided investigators with the names George "George C" Ciobotaru and James "JJ" Potasiewicz whom he said would corroborate his statement. When questioned, Potasiewicz revealed that he was with Stedman at the time of the shooting, and he saw Stedman shoot Scott; separately, Ciobotaru told authorities that Stedman admitted shooting Scott.
On December 10, 1996, the grand jury indicted Potasiewicz and Stedman for the aggravated murder of Scott. The prosecutor nolled the charges against Potasiewicz shortly thereafter, based on his agreement to testify against Stedman.
In June of 1999, members of the Federal Bureau of Investigation and the Cleveland Homicide Unit located Stedman in Bangkok, Thailand, where he had been living for four years as Duncan Allen Robert Smith. They then extradited him back to the United States to stand trial for Scott's murder.
The court conducted a jury trial in this matter. The state presented Starr, who testified that Stedman told him that he shot a prostitute while he and Potasiewicz were driving around together late in the evening near the Cleveland Clinic; and that he shot her after she said "What's up baby.
In its case-in-chief, the state also presented Ciobotaru, who testified that he had given a statement, on November 22, 1996, to FBI Agent Philip Torsney and Cleveland Police Detective Gary Garisek which incriminated Stedman. At trial, when he testified that he did not recall if it was Stedman himself who told him about the shooting, the court, upon the state's request, declared him to be a hostile witness. The court subsequently interrupted his testimony when he stated that he felt coerced by the police into making the statement against Stedman. Out of the hearing of the jury, the court admonished him for recanting his prior statements. Despite the court's warning, however, when his testimony resumed at trial, Ciobotaru maintained that his statement had been coerced.
The state also called Potasiewicz, who testified that on February 5, 1994, he had been out drinking with Stedman, and that after leaving the Flats, he rode in the passenger seat of the car driven by Stedman. While driving down a side street on Cleveland's east side, they saw a female walking across the street. Stedman slowed down the car, told Potasiewicz to roll down the passenger side window, reached over, opened the glove compartment and pulled out a gun. The female crossed the street and walked up to the passenger side window. Stedman stopped the car as she leaned into the window and said, "What's up, baby," to which Stedman responded nothing and instantaneously shot her in the face at close range and drove off.
Finally, the state called Robert Nemeth, who testified that, in 1993 and 1994, he, Ciobotaru, and Stedman would go out drinking in the Flats and afterwards would drive around the area of East 40th and Cedar Avenue to harass prostitutes. He testified that, in that area, if you stopped a car, a prostitute would approach you; he also testified that they harassed prostitutes by driving away as they approached.
Following trial, the jury returned a verdict finding Stedman guilty of the aggravated murder of Shareece Scott and the court imposed a life sentence.
Stedman now appeals, raising eight assignments for our review. The first states:
 I. THE TRIAL COURT ERRED BY ALLOWING A STATE WITNESS TO BOLSTER HIS CREDIBILITY THROUGH THE USE OF HEARSAY.
Stedman claims that the state's direct examination of Starr impermissibly bolstered its own witness's credibility through the use of hearsay by having Starr's testimony corroborated by Ciobotaru's out-of court statement. The record reflects at Tr. 101:
 Q. And after your conversations with George C [Ciobotaru], were you able to learn whether or not George C knew about this?
A. Yes.
Q. You did?
A. Yes.
 Q. And did George C's story about what happened, was it consistent with what the defendant had told you?
* * *
A. Yes. (Tr. 101.)
Stedman believes hearsay and confrontation problems exist with this testimony. In our view, the purported corroboration of one witness's testimony as consistent with that of another does not present a hearsay problem because the state had not offered any out-of-court statements made by Ciobotaru, the declarant of the alleged hearsay. Further, since Ciobotaru testified at trial and was available for cross-examination, no confrontation problem existed. Accordingly, this assignment of error is overruled.
The second assignment of error states:
 II. THE TRIAL COURT ERRED AND PREJUDICED THE APPELLANT WHEN IT IMPROPERLY INSTRUCTED AND REPRIMANDED A WITNESS.
Stedman next challenges the trial court's admonition to Ciobotaru concerning his effort to recant the oral statement he had given to police by testifying differently from it at trial. The state contends that no error occurred because the court advised Ciobotaru of the consequences of perjury outside the presence of the jury, and therefore did not prejudice Stedman. The issue for our review concerns then whether the court's admonitions of Ciobotaru prejudiced Stedman.
A trial court's comments made in the presence of a jury which may affect the credibility of a witness central to the determination of guilt or innocence may justify a reversal of the conviction. See State v.Thomas (1973), 36 Ohio St.2d 68, syllabus.
Here, the record reveals that the court's admonition of Ciobotaru took place outside the hearing of the jury. Therefore, the court's admonition to Ciobotaru about penalties of perjury did not reveal the court's feelings toward the witness which may have affected the credibility of his testimony. Significantly, here, despite the court's reprimand, Ciobotaru never wavered on recanting his prior statement to the police. Thus, the record does not indicate that the trial court's conduct toward Ciobotaru in any way prejudiced Stedman. Accordingly, we overrule this assignment of error.
The third assignment of error provides:
 III. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO CALL A WITNESS IN VIOLATION OF THE RULES OF DISCOVERY.
Stedman objects to the state's calling Robert Nemeth as a witness because he had not been listed on the state's witness list. He also objects to Nemeth's testimony as inadmissible other acts evidence offered by the state to show his propensity to the crime charged in violation of Evid. R. 404(B).
Regarding the first issue of whether the court erred in allowing Nemeth to testify despite the prosecutor's alleged violation of Crim.R. 16, we note that Crim.R 16(E)(3) provides for the regulation of discovery in a criminal case and permits a trial court to exercise discretion in determining the appropriate sanction for a discovery violation. See Statev. Scudder (1994), 71 Ohio St.3d 263. In Scudder, the court set forth the following test:
 * * * [W]here a prosecutor violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule, (2) that foreknowledge would have benefited the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced.
Here, the record indicates that after the trial had begun on September 29, 1999, the prosecutor discovered Nemeth on October 1, 1999, and, on that day, faxed Nemeth's name to Stedman's defense counsel, who somehow never received the fax.
The record does not clearly indicate that the prosecutor failed to comply with Crim. R. 16. First, although a more diligent review of the police file would have helped the prosecutor uncover the existence of Nemeth, the prosecutor relayed the information regarding Nemeth to defense counsel on the same day of the discovery of this witness. Therefore, we do not conclude that the state willfully violated Crim.R. 16. See Scudder, supra, at 269 (no willfulness exists where the evidence shows that the state is merely negligent in its investigation). Second, defense counsel had an opportunity to interview Nemeth before his direct testimony at trial; on cross-examination, defense counsel successfully elicited from Nemeth the fact that his brother worked with Potasiewicz, thus exposing a potential bias of Nemeth toward Potasiewicz, a potential suspect for the murder. Therefore, Stedman did not show either that the foreknowledge would have aided him in preparation of his case had he learned about the state's intention to call Nemeth sooner, or that the belated notice unfairly prejudiced him. Applying the tripartite test set forth in Scudder, then, we have concluded that the court did not abuse its discretion in permitting Nemeth to testify.
Stedman in addition challenges Nemeth's testimony as impermissible character evidence presented to show his propensity toward criminal conduct.
Evid.R 404 provides, in pertinent part:
 Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes
* * *
(B) Other Crimes, wrongs or acts.
 Evidence or other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
In State v. Lowe (1994), 69 Ohio St.3d 527, the court set forth the standard for the admissibility of other-act evidence:
 Other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged. "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B)." (Citation omitted.) " * * * A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. * * * To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question.
In the instant case, Nemeth testified that he, Ciobotaru, and Stedman, on at least one occasion between 1993 and 1994, drove around the area of East 40th and Cedar and harassed prostitutes; he also testified that in that area if you stopped a car, a prostitute would approach you. In our view, Nemeth's testimony is admissible to prove Stedman's knowledge or familiarity of where, when, and how the prostitutes practiced their trade on Cleveland's east side.
Moreover, this other act evidence is also admissible to prove identity by establishing a modus operandi applicable to the crime. The evidence established a "behavioral fingerprint" linking Stedman to the crime due to the common features shared on both occasions: after drinking at the bar, he drove around, late at night, in a certain area frequented by prostitutes for the purpose of harassing them. His prior activity and the instant offense demonstrate a similar method of operation and thereby help to establish identity.
Therefore, in our view, Nemeth's testimony proves both knowledge and identity, as permitted pursuant to Evid.R. 404(B). We therefore overrule this assignment of error.
Stedman's fourth, fifth, and seventh assignments of error, submittedpro se, concern allegedly inadmissible evidence and we address them together. They state the following:
 IV. FAILURE OF DEFENSE ATTORNEY, PRIOR TO TRIAL TO OBJECT OR ATTEMPT TO SUPPRESS, ANY TESTIMONY OR EVIDENCE CONCERNING THE DEFENDANT'S PLACE OF ARREST AND USE OF AN ALIAS.
 V. FAILURE OF DEFENSE ATTORNEY TO OBJECT TO PREJUDICIAL TESTIMONY CONCERNING A PAST CRIMINAL ACT THAT WAS WHOLLY INDEPENDENT OF AND WITH NO BEARING ON MURDER TRIAL.
 VII. PROSECUTION'S USE OF STATE WITNESSES TO ILLICIT [SIC] PREJUDICIAL TESTIMONY CONCERNING AN UNRELATED PRIOR CRIMINAL ACT OF DEFENDANT.
Stedman challenges the admissibility of the evidence regarding his arrest in Thailand and the use of an alias while there, as well as evidence regarding the outstanding arrest warrant for an unrelated arson charge. The state asserts that the court properly admitted the evidence.
Considering first the evidence of Stedman's flight from justice, we note that "the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." State v. Williams (1997), 79 Ohio St.3d 1,11.
In the instant case, Stedman's trial counsel argued that he left the country in June 1995 when the ATF agents sought him for unspecified weapon charges. The state, on the other hand, argued that Stedman fled the country because he feared that the police might learn about his involvement in Scott's murder if they arrested him in connection with the arson charge.
Given this state of the record, we do not think that the court erred in admitting the evidence and allowing the parties to present and argue competing inferences to be drawn from Stedman's flight from justice, one such inference being that he fled the country because of his consciousness of guilt of Scott's murder.
Stedman also challenges the testimony concerning the arrest warrant and his failure to appear in court relating to the arson charge as inadmissible other act evidence. The record indicates that this evidence was introduced when F.B.I. special agent Philip Torsney responded to the prosecutor's question as to the nature of the outstanding warrant for Stedman when he fled the country in 1995. In our view, this evidence, while constituting other act evidence, had been introduced to prove the state's contention that Stedman fled because he feared detection of his involvement in Scott's murder if held in custody on the arson charge. Thus, this is admissible evidence pursuant to Evid.R. 404(B) as it had been introduced for the purpose of proving Stedman's knowledge that he was wanted by the police, which he feared might lead to detection of his involvement in Scott's murder.
Stedman in addition claims that he received ineffective assistance of counsel because his trial counsel failed to object to the introduction of evidence regarding his flight and the arson charge.
To sustain a position that his counsel had been ineffective, Stedman must demonstrate both deficient performance and that, but for such conduct, the outcome of the trial would have been different. SeeStickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136.
On the basis of our review regarding the admissibility of the challenged evidence, we conclude that the record before us does not indicate ineffective assistance of counsel.
Consequently, we overrule his fourth, fifth, and seventh assignments of error.
His sixth assignment of error states:
 VI. FAILURE OF DEFENSE ATTORNEY TO PROVIDE FORENSICS EXPERT TO CONTRADICT STATE WITNESSES AND TO SUPPORT DEFENSE THEORY.
Stedman also contends that he received ineffective assistance of counsel because his trial counsel failed to employ a forensics expert, which, he believes, would have offered testimony contradicting the state's evidence that Scott had been shot at close range, thus pointing to his innocence.
Stedman's claim that the utilization of an expert would have exonerated him is speculation only, since the record does not reveal the kind of testimony an expert could have offered on his behalf. Because Stedman cannot demonstrate prejudice from his counsel's failure to employ an expert, his claim of ineffective assistance of counsel cannot stand. This assignment of error is also overruled.
Stedman's eighth assignment of error states:
 VIII. PROSECUTION'S CLOSING ARGUMENT STATEMENT OF ADDITIONAL EVIDENCE THAT COULD BE EXPLAINED AFTER THE TRIAL.
Stedman contends that the prosecutor improperly alluded during the closing argument to other people who heard about his involvement in the murder, none of whom testified. The prosecutor made the following remark at the state's closing argument:
 If you want to talk about, you know, different people, things like that, we could talk about it after this trial, but we submit to you that what we have presented to you is sufficient and we could explain to you later why every single person that may have heard about this was not called as a witness. (Tr. 457-458.)
A prosecutor should be afforded certain latitude and freedom of expression during closing argument. State v. Apanovitch (1987),33 Ohio St.3d 19. The court further instructed in Apanovitch that a prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. To determine whether reversal is justified, the court must view the prosecutorial misconduct in light of the entire case. State v. Maurer
(1988), 38 Ohio St.3d 275.
Here, the record shows that defense counsel did not raise any objections to the remark by the prosecutor. Stedman therefore waived his right to challenge it on appeal. Even if he had preserved this claim, the record reveals that Potasiewicz testified that Stedman told many people about Stedman's involvement in the murder. Furthermore, Ciobotaru testified that he heard as many as thirty people at work talking about Stedman's involvement. In his closing argument, defense counsel commented that no one other than Ciobotaru, Starr, and Potasiewicz appeared in court to testify despite the fact that many others supposedly knew of Stedman's involvement. We think that the prosecutor properly alluded to others who also knew of Stedman's involvement and properly implored the jury to consider the presentation of state's witnesses as sufficient to prove Stedman's guilt beyond a reasonable doubt. These comments emanated from evidence properly admitted into evidence during trial and had been made in response to defense counsel's remark at closing. Therefore, we believe that the prosecutor's comments had been within the latitude afforded by the law. Viewing the case in its entirety, including the eyewitness testimony of Potasiewicz and Stedman's change of identity and residence in Thailand, these comments made by the prosecutor in final argument did not deprive Stedman of a fair trial or rise to the level of prosecutorial misconduct justifying a reversal.
On the basis of the foregoing, we reject Stedman's contentions and affirm Stedman's conviction.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J. CONCURS; ANNE L. KILBANE, J. DISSENTS. (See Dissenting Opinion Attached.)