OPINION
Appellant, Leonard R. Norwood, Sr., appeals the August 29, 2000 judgment entry of the Lake County Court of Common Pleas.
On December 22, 1999, appellant was indicted on six counts of trafficking in cocaine, a felony of the fourth degree, in violation of R.C. 2925.03. On December 29, 1999, he waived his right to be present at the arraignment and entered a plea of "not guilty" to all charges. A jury trial took place on July 25, 2000.
Special Agent 56 of the Lake County Narcotics Agency ("LCNA") testified that on July 19, 1999, she and Special Agent 68 were "[m]onitoring and conducting a surveillance during a controlled buy which took place that evening" near the area of Nino's Lounge ("Nino's") and Tony's Subway Inn ("Tony's") in Painesville, Ohio. Special Agent 56 explained that a body transmitter was hooked up to Confidential Informant 478 ("CI 478"), who also worked for the LCNA.
CI 478 took the stand and related that in May 1999, the LCNA recruited him to work in a housing development in Painesville, called Argonne Arms.[1] The LCNA provided CI 478 with an apartment. In return for his assistance, he was "paid every time [he] made a buy * * *." According to CI 478, he earned approximately $230 for the six buys related to this matter. He also stated that he agreed to wear a wire on each of the buys.
CI 478 further testified that as part of his duties, he frequented Tony's and other establishments and became aware of their regular patrons. He explained that he saw people inside of those places selling drugs. CI 478 stated that by the end of June 1999, he was buying cocaine out of Tony's. He recalled appellant telling him that he could see appellant and that he "* * * could generally get what [he] wanted there."
According to CI 478, on July 19, 1999, one controlled buy took place at Tony's, where he gave appellant $100, and in return, appellant handed him two packets of cocaine. Prior to the buy, an agent from the LCNA completely searched CI 478, and then provided him with money and a wire. On this particular occasion, a videotape was made. The body transmitter enabled the LCNA agents to hear what transpired. However, Special Agent 56 stated that she could not specifically hear what was said because "[i]nside that bar there [was] too much noise background." She further averred that it was "[v]ery hard to make out what the individuals [were] saying because of the background noise and music."
Moreover, CI 478 testified that five additional transactions took place at Tony's: (1) on July 23, 1999, CI 478 paid appellant $125 for a teen (one sixteenth of an ounce) of cocaine; (2) on July 28, 1999, CI 478 gave appellant $230 for four packets of cocaine, plus an additional $5 for "hook[ing] him up"; (3) on August 6, 1999, CI 478 handed appellant $150 for three packets of cocaine; (4) on August 25, 1999, CI 478 counted out $250 for appellant and was given five packets of cocaine; and (5) on August 27, 1999, CI 478 presented appellant $50 in return for cocaine.[2]
Following all of the transactions, CI 478 was picked up by LCNA agents and searched. He then filled out a statement and signed it.
During the cross-examination, appellant's trial counsel questioned CI 478 about his finances and it was established that there was no court-ordered child support, but that CI 478 sent his child "any and all extra money that [he has]." The prosecutor objected and appellant's attorney explained that he wanted to show that his income "goes to motive and bias * * * and goes to his credibility * * *." The trial judge stated that he "was not going to allow [appellant's attorney] to go into family information, that sort of thing * * *." However, appellant's defense counsel continued to question appellant regarding his weekly expenses.
Appellant's attorney also asked CI 478 if he was involved in selling or trafficking cocaine, to which CI 478 responded "no." The prosecutor objected, and the trial judge overruled the objection, but stated that he expected appellant's attorney "to support [the] question, because the inference to the jury [had] to be supported later on * * * or [the trial court would] give an instruction." Appellant's trial counsel then inquired as to whether CI 478 or his girlfriend had a drug habit. CI 478 was also asked if he was ever tested for using drugs by the LCNA. CI 478 answered both of the questions in the negative.
Special Agents 72, 74, and 62 also took the stand and testified as to their involvement and the policies and procedures that were followed in each controlled buy. During appellant's testimony, he denied selling anything to CI 478.
On July 27, 2000, the jury returned a guilty verdict on all six counts. In a judgment entry dated August 29, 2000, appellant was sentenced to serve a prison term of thirteen months on each count, with the sentences to run concurrent to one another. Appellant's driver's license was also suspended for six months. Appellant timely filed the instant appeal and now advances the following as error:
 "[1.] The trial court violated [appellant's] Sixth Amendment right to confront and cross-examine witnesses against him when the trial court limited [appellant's] cross examination [sic] and instructed the jury to disregard the cross-examination of the [CI 478].
 "[2.] The trial court improperly commented upon, and improperly instructed the jury concerning the cross-examination of the [CI 478], and thereby violated [appellant's] right to have the jury determine the credibility of the [CI 478]."
 In the first assignment of error, appellant alleges that the trial court violated his Sixth Amendment right to confront and cross-examine witnesses against him by limiting the cross-examination of CI 478.
The Sixth Amendment to the U.S. Constitution and the Ohio Rules of Evidence guarantee the right of a criminal defendant to confront the witnesses against him for the biases they may hold. State v. Minier
(Sept. 28, 2001), Portage App. No. 2000-P-0025, unreported, 2001 WL 1149461, at 1.
A criminal defendant's right to confront and cross-examine a witness is not unlimited. Delaware v. Van Arsdall (1986), 475 U.S. 673, 679. A trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. Thus, "`the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (Emphasis sic.) Id., quoting Delawarev. Fensterer (1985), 474 U.S. 15, 20. Furthermore, the "constitutional right to cross-examine adverse witnesses does not authorize defense counsel to disregard sound evidentiary rules." State v. Amburgey
(1987), 33 Ohio St.3d 115, 117. While cross-examination itself is a matter of right, the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. State v. Green (1993), 66 Ohio St.3d 141, 147, citing Alford v.United States (1931), 282 U.S. 687, 691.
Evid.R. 608(B) concerns evidence of character and conduct of a witness and states:
 "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *."
 "Evid.R. 608(B) vests a trial court with discretion to allow cross-examination about specific instances of conduct of a witness `if clearly probative of truthfulness or untruthfulness.'" State v. Brooks
(1996), 75 Ohio St.3d 148, 151. Thus, there is a requirement of a high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the trial court will allow such cross-examination. Staff Notes to Evid.R. 608; State v. Williams (1981), 1 Ohio App.3d 156, 157.
Moreover, the cross-examination of a witness as to drug use to the extent that it tended to affect the credibility of the witness to observe matters about which he testifies is relevant on the issue of credibility. Johnson v. Knipp (1973), 36 Ohio App.2d 218, 223; Giannelli, Ohio Evidence Manual (1988) 32 Section 607.06. However, cross-examination of a witness as to general drug usage to show that he was a person unworthy of belief merely because he was of such character may not be clearly probative of truthfulness in a particular case. Statev. Boggs (Jan. 24, 1991), Adams App. No. CA 494, unreported, 1991 WL 13735, at 4-5; State v. Rutledge (Apr. 12, 1983), Montgomery App. No. 7830, unreported, 1983 WL 4885, at 3.
In the instant matter, the primary witness implicating appellant was a paid informant, CI 478, who denied using drugs. CI 478 worked with the LCNA to make controlled buys of cocaine in July and August of 1999. Although CI 478's testimony was, in part, verified by Special Agent 72 and the tape recordings of the transactions, it is obvious that CI 478's credibility was a central issue at trial.
In reviewing the trial transcript, defense counsel was unable to elicit admissions from CI 478 that he used drugs in the past. Nor was defense counsel able to offer any proof that CI 478 was, in fact, currently a drug user. As to CI 478's character for truthfulness, the record establishes that defense counsel had free rein to cross-examine him on his drug use. Additionally, we note that the jury had before it the testimony of Special Agents 56, 72, 74, and 62 confirming the transactions with appellant, as well as a tape recording of each transaction that was played in court. Thus, the evidence of the tapes and the testimony of the special agents from the LCNA helped corroborate CI 478's testimony. Accordingly, the trial court's limited restriction of defense counsel's questions was not error.
Furthermore, upon a review of the entire record of the proceedings below, we conclude that the trial court did not err in sustaining some of the objections raised by the prosecution. Defense counsel extensively cross-examined CI 478, and many of the inquiries were repetitive. Despite the trial court's rulings on the prosecutor's objections, appellant's trial counsel, through other questions, tried to present the jury with evidence that CI 478 was not a credible witness. In addition, during the cross-examination of CI 478, appellant's lawyer questioned appellant regarding his income from the LCNA, his eating expenses, his utility bills, and if he paid any child support. After the trial court disallowed any testimony dealing with family information, defense counsel indicated that he had no intention of asking anything further about CI 478's family. So, he abandoned the subject and moved to another area.
Based on the foregoing, it is our determination that there was no infringement on appellant's right to confront CI 478. Appellant's first assignment of error lacks merit.
For his second assignment of error, appellant asserts that the trial court improperly commented upon and instructed the jury as to the cross-examination of CI 478, and thus, violated his right to have the jury determine the credibility of CI 478.[3]
In the case at bar, the trial court's jury instruction as to this issue was as follows:
 "You must not speculate as to why the Court sustained the objection to any question or what the answer to such question might have been. You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered. Specifically, suggestions included in any questions that [CI 478] was a user of illegal drugs or that [CI 478] was protecting another drug supplier are to be disregarded, as no evidence supporting such suggestions was presented."
 Defense counsel objected to that portion of the jury instruction and stated that he believed that "evidence of [CI 478's] DUI conviction, the testimony of [Special] Agent 62, [and] that the situation was unique, was enough to be a rational inference that could logically be drawn from the facts and circumstances of that case."
When reviewing a trial court's jury instructions, an appellate court must examine the entire jury charge. State v. Porter (1968),14 Ohio St.2d 10, 13. One sentence or one phrase should not be looked at in isolation. Id.
As previously mentioned, during the cross-examination, defense counsel asked CI 478 whether he was involved in selling cocaine, and the prosecutor objected. The trial judge overruled the objection and stated that appellant's attorney had to support the question because of the inference to the jury or else the trial court would give a limited instruction on the issue. Appellant's trial counsel then inquired as to whether CI 478 or his girlfriend had a drug habit. CI 478 was also asked if he was ever tested for using drugs by the LCNA. CI 478 answered both of the questions in the negative.
Based on this testimony, the trial court determined that defense counsel did not present any other evidence to support the suggestions and instructed the jury accordingly. Instead, defense counsel attacked CI 478's credibility with questions that were unsupported by independent corroborative evidence. After re-examining the record, we agree that appellant's attorney did not substantiate his claims regarding CI 478's alleged drug habit. Moreover, defense counsel did not object to the court's ruling at that time.
The Supreme Court of Ohio has stated that a witness may be asked a question on cross-examination "if the examiner has a good-faith belief that a factual predicate for the question exists." State v. Gillard
(1988), 40 Ohio St.3d 226, paragraph two of the syllabus. However, it is improper for an examiner to ask a question in bad faith, and thus, put information before a jury that is not supported by the evidence. Statev. Evans (July 27, 2001), Montgomery App. No. 18512, unreported, 2001 WL 848534, at 3. "The attempt to communicate by innuendo through the questioning of witnesses when the questioner has no evidence to support the innuendo is improper." State v. Williams (1977), 51 Ohio St.2d 112,119.
In State v. Thomas (1973), 36 Ohio St.2d 68, 71, the trial court made comments about the court's position as to the confidential informant's cooperation with authorities; therefore, suggesting that his motive for testifying was not self-serving. However, the facts in the instant matter are dissimilar from Thomas.
Here, the trial court did not comment on the credibility of CI 478. Based, on the totality of the circumstances, the trial court simply ruled on an objection and employed the proper corrective measure based on defense counsel's cross-examination. Thus, it is our view that the instruction was not improper.
Further, generally, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. State v. Fields (1984),13 Ohio App. 433, 436. Hence, even if the instruction was inappropriate, it did not materially affect the outcome of this case, nor was there any prejudicial error justifying a reversal of the judgment. Appellant's second assignment of error is overruled.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
CHRISTLEY, J., GRENDELL, J., concur.
[1] CI 478's testimony reveals that his recruitment occurred after he received a DUI in Ashtabula County in 1998.
[2] For the August 6 and 25 buys, Special Agent 72 from the LCNA was inside of Tony's and observed the interaction between CI 478 and appellant.
[3] We note that appellant also raised this issue as part of his first assignment of error, but we will address it here.