[Cite as *Wray v. Sandusky 250-Perkins, L.L.C.*, 2018-Ohio-3515.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Jerry Wray, Director, Ohio Department
of Transportation

Court of Appeals No. E-17-049

     Appellant

Trial Court No. 2014-CV-0388

v.

Sandusky 250-Perkins, LLC, et al.

**DECISION AND JUDGMENT**

     Appellees

Decided:  August 31, 2018

* * * * *

Mike DeWine, Ohio Attorney General, Corinna V. Efkeman and
L. Martin Cordero, Assistant Attorneys General, for appellant.

Linde Hurst Webb and Daniel T. Ellis, for appellees.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} In this eminent domain action, appellant, Jerry Wray, Director of the Ohio

Department of Transportation ("ODOT"), appeals the judgment of the Erie County Court

of Common Pleas, following a jury trial, which awarded appellee, Sandusky 250-Perkins,

LLC,[1] $461,486.00 in compensation for the property taken and damages. For the reasons that follow, we reverse.

## I. Facts and Procedural Background

{¶ 2} Appellee is the owner of the Pat Catan's shopping center located at the corner of Perkins Avenue and U.S. 250 (Milan Road) in Erie County. The center has 57,980 square feet of retail space, and includes as tenants, Pat Catan's, Goodwill, and Little Caesars, among others.

{¶ 3} As part of a road-widening project on U.S. 250, ODOT appropriated a five to seven foot wide strip of appellee's land along Perkins Avenue, comprising .0532 acres of appellee's 5.5188 acre property. ODOT also appropriated a temporary construction easement and a sewer easement over appellee's property along U.S. 250. None of the buildings were altered by the project. Notably, though, the construction project required changing the entrances and exits to appellee's property. Along Perkins Avenue, appellee's two existing full-motion driveways were shortened, and one of the driveways was relocated closer to the intersection with U.S. 250. Along U.S. 250, the existing southernmost full-motion driveway was unchanged, but the northernmost driveway was converted from a full-motion driveway to a right-turn entrance only. In addition, the construction necessitated ODOT's removal of eight light posts, positioned two each at the

---

[1] The Erie County Auditor and Treasurer, and the Citizens Banking Company, were also named as defendants in the appropriation action. For purposes of our discussion, we will refer solely to the landowner, Sandusky 250-Perkins, LLC, as the appellee.

2.

driveways onto appellee's property. However, one of those light posts was located in an existing right of way owned by the state, so ODOT was only required to compensate appellee for seven of them.

{¶ 4} At trial, appellee presented the testimony of John Hancock, an engineer that appellee had previously retained to do some planning on the property. Hancock testified to the need to reconfigure the lighting on the property, and to replace the lights taken down in the construction with new lights located in the interior of the parking lot. As part of the relocation and placement of new lights, the electrical feeds had to be buried, requiring trenches to be dug through the parking lot pavement. Hancock testified that the cost to replace the lights would be $66,283. In addition, Hancock testified that the trenching caused the parking lot to need to be resurfaced, and he attributed $66,540 of that cost to ODOT. Finally, Hancock testified that the changes to the driveways along Perkins Avenue and U.S. 250 created a need to include directional and traffic signage within the parking lot. Hancock concluded that the total cost of the modifications to the property caused by ODOT's project was $166,805.63.

{¶ 5} Appellee also called Kula Hoty Lynch, who is corporate counsel for Hoty Enterprises, a real estate development and management company. Hoty Lynch is also a licensed commercial real estate broker. Hoty Lynch testified to a rental property that Hoty Enterprises owned along U.S. 250, which was similarly affected by a previous ODOT project. Hoty Lynch explained that as a result of the construction and change in access to the property, the amount Hoty Enterprises could charge to lease the property

3.

dropped by $3 per square foot. Hoty Lynch next testified, over ODOT's objection that her testimony was outside the scope of her affidavit provided in discovery, that it was her professional opinion that the change in access caused by the current construction project has likewise reduced the value of appellee's property.

{¶ 6} Hoty Lynch was then asked whether the properties selected by ODOT's appraiser to value appellee's property were in fact comparable. ODOT objected, again arguing that her testimony was beyond what was provided in the affidavit, and that there was no foundation that she was able to evaluate the value of the property. The trial court overruled ODOT's objection. Appellee then attempted to demonstrate that Hoty Lynch was qualified to estimate a property's value per acre. ODOT objected again, arguing that Hoty Lynch was not an appraiser. Appellee responded that being an appraiser is irrelevant, and that a commercial realtor such as Hoty Lynch knows the value of property. In overruling ODOT's objection, the trial court stated in front of the jury:

> I think there's been a foundation laid that she's an attorney at law,
> she has been working in this area for I think 16 years she testified to. The
> Court has personal knowledge that this is what she does, their family buys
> and sells real estate; they have a lot of property on 250, and I think she's – I
> think she's a good witness, and I'm going to overrule the objection.

Hoty Lynch then proceeded to testify regarding some of the comparable properties used by ODOT's appraiser. She concluded, over ODOT's objection, that the value of appellee's property determined by ODOT's appraiser was "pretty low."

4.

**{¶ 7}** On cross-examination, Hoty Lynch testified that she was not an appraiser, and has not sought to become an appraiser. She did testify, however, that she has at times been paid a fee to offer a "broker opinion of value," which essentially tells a client what she thinks his or her property is worth. On redirect, because Hoty Enterprises has appellee's property listed, she offered her opinion, over ODOT's objection, that appellee's property was worth between $550,000 and $600,000 per acre, which was significantly higher than the number provided by ODOT's appraiser.

**{¶ 8}** Appellee next presented the testimony of Debi Wilcox, a licensed appraiser. Wilcox testified that the total compensation owed to appellee was $926,490. Of that amount, she attributed $45,180 for the land actually taken, $36,333 for site improvements such as exterior lights and asphalt paving that were taken, $668,487 for the decrease in the value of the remainder of the land, $166,806 for the cost to cure the property as taken from Hancock's analysis, and $9,684 for the temporary construction easements.

**{¶ 9}** Following Wilcox's testimony, ODOT addressed the court out of the presence of the jury regarding the court's statements during Hoty Lynch's testimony. ODOT was concerned that the court inadvertently personally endorsed Hoty Lynch through its claim of personal knowledge and conclusion that Hoty Lynch was a "good witness." Based on that, in conjunction with ODOT's position that Hoty Lynch testified beyond what was disclosed before the trial to be the subject of her testimony, ODOT requested that her testimony be stricken in its entirety, or alternatively be limited only to her testimony regarding the rental property owned by Hoty Enterprises on U.S. 250. The

5.

trial court denied ODOT's request to strike all of Hoty Lynch's testimony, and instead offered to give a curative instruction at the close of the evidence.

{¶ 10} After appellee rested, ODOT called their own licensed appraiser, Jefferson Sherman, as a witness. Sherman testified that the total compensation owed to appellee was $71,402. Of that amount, Sherman attributed $19,677 for the land actually taken, $39,153 for site improvements such as exterior lights and asphalt paving that were taken, $0 for the decrease in the value of the remainder of the land, $10,463 for the cost to cure the property, and $2,109 for the temporary construction easements.

{¶ 11} Upon the conclusion of the presentation of evidence, but before closing arguments were made or jury instructions given, the trial court gave the following instruction regarding Hoty Lynch's testimony:

> The Court made some comments in response to an objection made by Mr. Cordero on behalf of the Ohio Department of Transportation during the testimony of Kula Hoty Lynch. The Court's comments were intended to make it clear that it found the witness to be qualified to testify; however, like every other witness in this case, and the instructions that the Court has given you, and will give you again, it is for you, the jury, to decide the credibility of each witness, and you should disregard any comments by the Court as to credibility. That is for the jury to weigh – to weigh the credibility of each witness including the testimony of Kula Hoty Lynch.

6.

**{¶ 12}** Ultimately, the jury returned with a verdict awarding $461,486 in compensation to appellee. Specifically, the jury awarded $61,186 as compensation for the property taken, $345,000 for the decrease in value of the remaining property, $49,500 for the cost to cure the property, and $5,800 for the temporary easements.

## II. Assignments of Error

**{¶ 13}** Appellant has timely appealed the judgment memorializing the verdict, and now asserts two assignments of error for our review:

> 1. The trial court erred to the prejudice of ODOT by allowing a witness, who is not an appraiser, to offer an expert opinion on value and then personally endorse that witness in the presence of the jury.

> 2. The trial court erred to the prejudice of ODOT by allowing the jury to consider, and ultimately award, construction related damages not caused by the appropriation and outside the appropriated area in the form of a cost to cure to the residue property.

## III. Analysis

**{¶ 14}** In its first assignment of error, ODOT argues that the trial court abused its discretion by personally endorsing Hoty Lynch and allowing her to give an expert opinion on compensation and damages. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

7.

{¶ 15} In support of its assignment of error ODOT advances two arguments. First, it argues that the trial court's comments regarding Hoty Lynch deprived it of a fair trial. Second, ODOT argues that Hoty Lynch's testimony regarding a rental value loss of $3 per square foot on a separate property was contrary to law. Notably, appellee does not address the arguments raised by ODOT on appeal, but instead argues against the issues raised during the trial that Hoty Lynch was not qualified to testify to the value of property because she is not an appraiser and that Hoty Lynch was not disclosed as an expert witness. We will address ODOT's arguments in reverse order.

{¶ 16} In determining that Hoty Lynch's testimony was contrary to law, ODOT relies on the proposition that "when valuing property for eminent domain purposes, Ohio courts do not consider individual leases and other partial interests." *Proctor, Dir., Ohio Dept. of Transp. v. CNL Income Fund IX, Ltd.*, 6th Dist. Wood No. WD-04-027, 2005-Ohio-1223, ¶ 27, citing *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision*, 37 Ohio St.3d 16, 23, 523 N.E.2d 826 (1988). In *CNL Income Fund*, we held that the trial court did not abuse its discretion when it excluded evidence regarding the lease between the property owner and its tenant. *Id.* at ¶ 34. Here, however, Hoty Lynch's testimony concerning the $3 per square foot loss of rental value was not related to the property subject to appropriation, but rather described a separate property that had been impacted by the construction on U.S. 250. This information was relevant to determining the market rental value of appellee's rental property, and indeed was used as part of appellee's appraiser's calculations in determining the value of appellee's property. As we recognized in *CNL*

8.

*Income Fund*, "[E]vidence of *market* rental value is admissible as a factor in determining the fair market value of the whole property." (Emphasis sic.) *Id.* at ¶ 28, citing *The Queen City Realty Co. v. Linzell*, 166 Ohio St. 249, 142 N.E.2d 219, paragraph two of the syllabus. Therefore, we hold that Hoty Lynch's testimony on this subject is not contrary to law.

{¶ 17} Turning to ODOT's first argument, we agree that the trial court's comments prejudiced ODOT and deprived it of a fair trial. "In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness." *State ex rel. Wise v. Chand*, 21 Ohio St.2d 113, 256 N.E.2d 613 (1970), paragraph three of the syllabus.

{¶ 18} Here, we find the facts to be remarkably similar to those in *Emery v. Toledo*, 36 Ohio App. 488, 173 N.E. 635 (6th Dist.1929). In that case, the city called into question the qualifications of a witness who testified favorably for the property owner in an eminent domain proceeding. In response, the trial court commented, "Let the record show that the Court has some determination as to whether or not an expert witness is qualified, and the Court knows [the witness] and has known him for thirty years, and knows that he knows the value of that property around there." *Id.* at 489-490. The city objected to the trial court's comments, and at the close of the witness's testimony, the court made the following statement:

9.

[L]et the record show that when the Court stated that he knew that [the witness] knew the value of this property he was in error – the jury will disregard that statement of the Court. The Court does not know – the Court withdraws that statement. He does not know that [the witness] knows the value of that property. What the Court wishes the jury to understand is only this, -- that the Court has known [the witness] for many years, and knows that he has lived out there, and considers him a qualified witness, and that is all. *Id.* at 490.

Ultimately, the jury awarded a verdict in line with the value provided by the witness.

{¶ 19} On appeal, this court reversed. We held that the comments by the court were clearly erroneous and prejudicial to the city, and that the comments were not cured by the later instruction from the court. *Id.* at 491. In particular, we noted that the trial court "went a good way in expressing his own personal opinion as to the qualification of this expert witness, and such statement was well calculated to influence the mind of the jury." *Id.*

{¶ 20} Similarly, in this case, the trial court's comments during Hoty Lynch's testimony highlight the trial court's personal knowledge in determining that she was a "good witness," thereby improperly bolstering Hoty Lynch's credibility. We further find that the trial court's comments were of such a nature that they could not be cured by its subsequent instruction, recognizing that "It is well known, as a matter of judicial notice, that juries are highly sensitive to every utterance by the trial judge, the trial arbiter, and

10.

that some comments may be so highly prejudicial that even a strong admonition by the judge to the jury, that they are not bound by the judge's views, will not cure the error." *State v. Thomas*, 36 Ohio St.2d 68, 72, 303 N.E.2d 882 (1973), quoting *Bursten v. United States*, 395 F.2d 976, 983 (5th Cir.1968). Therefore, we hold that the trial court abused its discretion when it endorsed Hoty Lynch's testimony based on its personal knowledge.

{¶ 21} Accordingly, ODOT's first assignment of error is well-taken.

{¶ 22} In its second assignment of error, ODOT argues that the trial court should not have allowed the jury to consider construction related damages occurring outside of the appropriated area in the form of a cost to cure the residue property. However, in light of our holding on ODOT's first assignment of error, which requires us to remand the matter for a new trial, ODOT's second assignment of error is moot. Thus, we will not reach the merits of ODOT's argument. *See State ex rel. Ohio Democratic Party v. Blackwell*, 111 Ohio St.3d 246, 2006-Ohio-5202, 855 N.E.2d 1188, ¶ 50 ("This conclusion is also consistent with the 'cardinal principal (sic) of judicial restraint – if it is not necessary to decide more, it is necessary not to decide more.'").

{¶ 23} Accordingly, ODOT's second assignment of error is moot, and is not well-taken.

## IV. Conclusion

{¶ 24} For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the judgment of the Erie County Court of Common Pleas is reversed. This matter is remanded to the trial court for a new trial consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
James D. Jensen, J.                          JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.