OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Thomas C. Rector, appeals the decision of the Carroll County Court of Common Pleas finding him guilty of four counts of rape, sentencing him accordingly, and determining him to be a sexual predator.
 {¶ 2} In this case, we are asked to determine a variety of issues, including whether the prosecutor and the trial court committed various acts of misconduct, and whether trial counsel was ineffective in a variety of ways. In addition, Rector argues the victim's testimony should have been stricken due to pre-trial preparation, his conviction was not supported by sufficient evidence, and his conviction was against the manifest weight of the evidence. Finally, he challenges his classification as a sexual predator. We conclude Rector's arguments challenging his conviction are meritless. However, we conclude the trial court failed to provide Rector with adequate notice of his sexual predator hearing. Thus, we affirm Rector's conviction, but reverse the trial court's decision classifying him as a sexual predator. This matter is remanded to the trial court so it may properly conduct a sexual predator hearing.
 {¶ 3} Paul Vogley married Carrie Rosenberger in 1992. That same year, the couple gave birth to their only child. Unfortunately, the marriage did not last and the two were divorced in 1994. Subsequently, Carrie was married twice more, the third time to Rector. She and Rector resided in Carrollton, Ohio.
 {¶ 4} At the time of Paul and Carrie's divorce, the court ordered standard visitation. However, the couple arranged their own agreement on visitation. In 1997, the couple agreed to let the child live with Paul in North Canton, Ohio, and retained their visitation by mutual arrangement. Pursuant to that agreement, Carrie would have the child about every other weekend, on alternating holidays, and for nine or ten weeks during the summer. For instance, the child was with Carrie and Rector during Thanksgiving 1999, portions of Christmas 1999, and the summer of 2000.
 {¶ 5} On September 13, 2000, Paul came home from work and saw the child had cold sores on her mouth. The child had been with Carrie and her husband, Rector, the weekend before. He asked her about the cold sores and the child began crying. She then told her father Rector had licked her "pee-pee" and digitally penetrated her when she was visiting her mother in Carrollton. Paul called the police who arranged to have the child examined at the Akron Children's Hospital. On September 20, 2000, a nurse-practitioner at that hospital conducted that examination. She found no physical signs of abuse.
 {¶ 6} After this examination and police interviews of the child, Carrie, and Rector, the Carroll County Grand Jury returned an indictment which charged Rector with five counts of rape occurring at various times between October 1999 and October 2000. Before trial, the State moved to amend the indictment to reflect that the first count occurred over September 8, 9, and 10, 2000 rather than October 8, 9, and 10, 2000. The trial court reviewed the Grand Jury testimony and denied the motion to amend. The State then nolled that count. At the close of the jury trial, Rector was found guilty of counts two through five. Subsequently, the trial court held a sentencing hearing and sexual predator adjudication hearing. After that hearing, the trial court classified Rector as a sexual predator, sentenced him to the maximum, four ten-year sentences, and ordered those sentences be served consecutively.
 {¶ 7} Rector raises nine assignments of error on appeal, which are listed in the appendix to this opinion. Many of the arguments within these assignments of error deal with different methods of reviewing the same fact patterns. For purposes of clarity of analysis, we have rephrased them into eleven issues which we must resolve.
 {¶ 8} 1. The defendant was highly prejudiced by the numerous leading questions the prosecution asked the child during its direct and redirect examinations of her and the trial court erred by failing to remedy that prejudice.
 {¶ 9} 2. The trial court erred when it failed to strike the child's testimony because that testimony demonstrated the substance of her testimony was not based upon her present recollection of the facts.
 {¶ 10} 3. The defendant was denied a fair trial by prosecutorial misconduct, trial court misconduct, and the ineffective assistance counsel rendered to him with regard to the first, nolled count of the indictment.
 {¶ 11} 4. The prosecutor committed misconduct by vouching for the credibility of its witnesses and Defendant's counsel was ineffective for failing to object to this misconduct.
 {¶ 12} 5. The defendant's trial was rendered unfair by other instances of prosecutorial misconduct not mentioned above, the trial court's allowance of that misconduct, and counsel's ineffectiveness for failing to object to that misconduct.
 {¶ 13} 6. The trial court committed misconduct in ways not previously mentioned and counsel was ineffective for failing to object to this misconduct.
 {¶ 14} 7. The defendant's conviction was not supported by sufficient evidence.
 {¶ 15} 8. The defendant's conviction was not supported by the manifest weight of the evidence.
 {¶ 16} 9. The defendant was denied a fair trial because his counsel was ineffective in ways not previously mentioned.
 {¶ 17} 10. The defendant's conviction should be reversed due to the cumulative errors which occurred at trial.
 {¶ 18} 11. The trial court erred when designating the defendant as a sexual predator and counsel was ineffective in those proceedings.
 Legal Standards {¶ 19} Because we have reformulated Rector's arguments to center around the facts involved in those arguments rather than the standards we must employ when conducting our review, it will be helpful to delineate some of the basic tests and standards we will be employing throughout this opinion.
 {¶ 20} Many of Rector's arguments deal with matters which are in the sound discretion of the trial court. When reviewing those matters, we will not reverse the trial court's decision unless it has abused that discretion. See Ramage v. Central Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 592 N.E.2d 828, paragraph six of the syllabus. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.
 {¶ 21} In many cases, Rector did not specifically object to the matters he now claims as error on appeal. Those questions not objected to are reviewed under the plain error standard found in Crim.R. 52(B). "`Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" State v. Manley (1994),71 Ohio St.3d 342, 347, 643 N.E.2d 1107, quoting, State v. Long (1978),53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. "`Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.'" Id., quoting, State v. Moreland (1990), 50 Ohio St.3d 58, 62,552 N.E.2d 894.
 {¶ 22} Rector also argues that the prosecution's introduction of some of these objectionable matters constitutes prosecutorial misconduct. The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. State v. Fears
(1999), 86 Ohio St.3d 329, 332, 715 N.E.2d 136. In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected substantial rights of the appellant. State v. Smith (1984),14 Ohio St.3d 13, 14-15, 14 OBR 317, 470 N.E.2d 883. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Hanna, 95 Ohio St.3d 285, 2002-Ohio-2221,767 N.E.2d 678, ¶ 61, quoting Smith v. Phillips (1982), 455 U.S. 209,219, 102 S.Ct. 940, 71 L.Ed.2d 78. An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. State v. LaMar,95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121. A failure to object to alleged prosecutorial misconduct waives all but plain error. Hanna at ¶ 77; LaMar at ¶ 126
 {¶ 23} Likewise, Rector characterizes many of the trial court's actions relating to these objectionable matters as misconduct. The test for trial court misconduct is similar to that for prosecutorial misconduct. "Challenged statements and actions of the trial judge in a criminal case will not justify a reversal of the conviction, where the defendant has failed in light of the circumstances under which the incidents occurred to demonstrate prejudice." State v. Wade (1978),53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244, at paragraph two of the syllabus. The test for the trial court's actions is whether those actions interfered with the defendant's constitutional right to a fair trial.State v. Thomas (1973), 36 Ohio St.2d 68, 71, 65 O.O.2d 216,303 N.E.2d 882; State v. Lawrence (1954), 162 Ohio St. 412, 55 O.O. 236,123 N.E.2d 271. The Ohio Supreme Court has set forth five factors a reviewing court must consider when determining whether a trial court's actions and remarks prejudice a criminal defendant's right to a fair trial:
 {¶ 24} "(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." Wade at 188.
 {¶ 25} If a defendant does not object to the trial court's actions or remarks, then the defendant has waived all but plain error. Id.
 {¶ 26} Finally, Rector argues his trial counsel was ineffective in relation to many of these matters. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 100, 17 OBR 219, 477 N.E.2d 1128. When reviewing whether counsel's performance was ineffective, courts must refrain from second-guessing strategic decisions of trial counsel. State v. Sallie
(1998), 81 Ohio St.3d 673, 674, 693 N.E.2d 267. Ineffectiveness is demonstrated by showing counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment.State v. Hamblin (1988), 37 Ohio St.3d 153, 156, 524 N.E.2d 476. To establish prejudice, a defendant must show there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland at 694. A reasonable probability must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. Smith at 100.
1. Leading Questions
 {¶ 27} Rector contends his trial was unfair because of the numerous leading questions the prosecution asked the child during her direct and redirect examinations. More specifically, he claims the trial court erred in overruling his objections to the form of questioning, the prosecution committed misconduct when it used those leading questions, and the trial court committed misconduct in allowing that form of questioning. He acknowledges authority exists which condones the use of leading questions in child sexual abuse cases, but argues that the way in which the trial court exercised its discretion in this case "permitted the prosecution an unfair advantage." He further argues that the trial court erred when it denied his motion to strike the child's testimony due, in part, to the form of the questioning. In response, the State argues it is within the sound discretion of the trial court whether it will allow a party to ask leading questions of its own witnesses and, because the witness in this instance was a child, the trial court did not abuse that discretion. Thus, it argues Rector was not prejudiced by this form of questioning.
 {¶ 28} Evid.R. 611(C) provides leading questions cannot be used on direct examination of a witness "except as may be necessary to develop his testimony." "The exception `except as may be necessary to develop his testimony' is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court." State v. Lewis (1982), 4 Ohio App.3d 275, 278, 4 OBR 494, 448 N.E.2d 487.
 {¶ 29} Rector did not specifically object to many of the leading questions in this case. He entered objections three times to questions relating to the timing of the alleged rape incidents and, when the prosecution was setting forth the facts surrounding the third rape, he entered a continuing objection to the leading nature of the questions. Thus, he has preserved his argument as to some of these leading questions and we will subject the trial court's decision to an abuse of discretion standard. Ramage at paragraph six of the syllabus. The remainder will be reviewed under the plain error standard. See State v. Jones (July 21, 2000), 2nd Dist. No. 17903. In addition, a trial court's decision either granting or denying a motion to strike will not be reversed on appeal absent an abuse of discretion. Riley v. Langer (1994), 95 Ohio App.3d 151,157, 642 N.E.2d 1.
 {¶ 30} As Rector acknowledges, the trial court's discretion in these matters is quite broad. It is in a much better position than we are to gauge when leading questions are necessary to develop a witness's testimony. State v. Holt (1969), 17 Ohio St.2d 81, 83, 46 O.O.2d 408,246 N.E.2d 365. The Ohio Supreme Court provided an example of this broad discretion in Holt. In Holt the defendant was charged with the kidnapping and rape of a seven year-old child. The trial court found the victim competent to testify. At trial, the victim took the stand and, with the trial court's approval, "most of the questions asked her on direct examination were highly leading, eliciting answers generally given in monosyllables or by nods of the head." Id. The Ohio Supreme Court found the trial court did not abuse its discretion, emphasizing the trial court's broad discretion in these areas. Court's have continued to emphasize the latitude given the trial court in such matters, especially in cases involving children who are the alleged victims of sexual offenses. See State v. Miller (1988), 44 Ohio App.3d 42, 541 N.E.2d 105;State v. Madden (1984), 15 Ohio App.3d 130, 15 OBR 221,472 N.E.2d 1126; State v. Matheny (Mar. 6, 2002), 5th Dist. No. 2001AP070069; State v. Mader (Aug. 30, 2001), 8th Dist. No. 78200;State v. Pegram (Jan. 22, 1998), 7th Dist. No. 95 C.A. 80; State v.Hutton (Aug. 30, 1995), 7th Dist. No. 93-B-2.
 {¶ 31} Rector complains the trial court's decision allowing the leading questions was unfair because it made the prosecution's job easier and abated "[t]he prosecutor's concerns about the child's in-court performance". However, it does not appear the trial court either committed plain error or abused its discretion when it allowed the prosecution to ask the victim leading questions on direct examination. As stated above, the child was of tender years when the incidents allegedly occurred, and was eight years of age at the time of the trial. It is apparent from the record that the child was uncomfortable talking about the incidents.
 {¶ 32} In addition, many of the leading questions were merely clarifying answers the victim had already given. For instance, when asking the child about the first time she met Rector, the child answered, "It was in the summer I think." The prosecutor then asked whether it was in the summer before second grade in order to clarify the timeline. In contrast, when dealing with some of the more important issues, the prosecutor did not ask leading questions. For example, when talking about the first rape incident the prosecutor asked who came in the bedroom and the child answered, "Tom."
 {¶ 33} Finally, the child's testimony demonstrates that she was testifying from her own knowledge of the incidents. For example, the prosecutor asked the child leading questions regarding what happened during the first incident. At the end of that portion of the testimony, the prosecutor asked the child if anything else happened at that time and the child answered in the negative. This kind of exchange occurred more than once during her testimony.
 {¶ 34} For these reasons, we cannot conclude the trial court erred plainly or otherwise when it overruled Rector's objections to the form of questioning. Likewise, because prosecutors are allowed to ask leading questions in these circumstances, we cannot find either the prosecutor or the trial court committed misconduct in regards to these leading questions. Finally, because the trial court did not err in allowing the prosecutor to ask leading questions, it did not abuse its discretion when it denied Rector's motion to strike the child's testimony due to the manner in which it was elicited. Thus, each of Rector's arguments relating to the manner in which the prosecution questioned the child are meritless.
2. Pre-trial Witness Preparation
 {¶ 35} Rector's motion to strike the child's testimony was two-pronged. The first prong, that the testimony was elicited primarily though the use of leading questions, is dealt with above. However, Rector also argued the child's testimony should be stricken because her admissions on cross-examination demonstrated the substance of her testimony was not based upon her present recollection of the facts and, therefore, must be stricken. According to Rector, the witness's description of the manner in which she was prepared to testify demonstrates that she lacks the ability to testify from her own recollection and is, therefore, not competent to testify. The State argues the trial court did not abuse its discretion when denying the motion to strike as preparation of a witness is a vital job for any trial attorney.
 {¶ 36} On cross-examination of the child, Rector extensively delved into the manner in which the prosecution prepared the victim for testifying in this case. The child admitted she did not "remember very good" and she had seen the prosecutor "five or six times" before trial. The child testified the prosecutor brought her to the court, sat her in the witness chair, and "practiced" her testimony prior to trial. The child also stated she remembered some things more clearly because she had reviewed a paper which contained things she had previously said to the police and the prosecutors about Rector's actions. That paper was apparently prepared by the prosecutor. Due to this pre-trial preparation, Rector moved to strike the child's testimony. The trial court denied that motion.
 {¶ 37} In arguing that the child's testimony should have been striken because it was not based upon her present recollection of the facts, Rector cites to sections of O.Jur.3d which, in turn, cite Evid.R. 612. However none of those authorities support his argument.
 {¶ 38} Evid.R. 612 provides a witness may use a document to refresh his recollection before testimony and, "if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced." If the court makes such an order and, in a criminal case, the prosecution fails to produce the writing, the court may either strike the testimony or declare a mistrial. Id. In this case, Rector never requested the prosecution produce that writing and the trial court never ordered that writing be produced. Thus, Rector cannot avail himself of the sanctioning portion of Evid.R. 612.
 {¶ 39} Rector's argument is that the testimony demonstrates the child would not have had a present recollection of events had she not reviewed the document prior to testifying. However, Rector's argument misses the point; this is precisely the purpose of allowing witnesses to refresh their recollection. See Dayton v. Combs (1993), 94 Ohio App.3d 291,297, 640 N.E.2d 863. "It is a long established principle in Ohio law that a witness may refresh his recollection." Evid.R. 612, Staff Notes. There is no requirement in the rule that the witness must have prepared the writing being used to refresh that recollection. Adopting Rector's argument would seriously hamper a trial counsel's ability to adequately prepare their witnesses for trial.
 {¶ 40} Finally, as the State points out in its brief, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, 30 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. A thorough cross-examination of a witness to determine how he or she prepared for trial, such as was conducted in this case, allows a party to demonstrate its disbelief in the witness's credibility. Thus, establishing the fact that a witness had to review a document prepared by someone else prior to trial because the witness does not remember the events very well is effective advocacy, but does not demonstrate a basis for striking that witness's testimony.
 {¶ 41} For these reasons, Rector's arguments relating to the manner in which the child was prepared by the prosecution prior to trial are meritless.
3. The Nolled Count in the Indictment
 {¶ 42} Prior to trial, the State moved to amend the first count of the indictment to reflect the correct dates it believed Rector last raped the child. Rector opposed that motion. The trial court allowed the trial to commence before ruling on that motion. However, after the State's first witness finished testifying, the trial court informed the parties that it was denying the State's motion. The State then agreed to nolle that count. Rector argues the prosecutor committed misconduct when it continued to elicit testimony related to that first count and that the trial court erred when it overruled his motion for a mistrial due to that misconduct. He also argues the trial court committed misconduct by failing to rule on the motion prior to the commencement of trial, by allowing the prosecutor's statements, and by failing to give an adequate curative instruction. Finally, he argues his counsel was ineffective by failing to request a continuance until the court ruled on the motion to amend, by failing to object to the prosecutor's statements, and by failing to request a more adequate curative instruction. The State argues that even if the prosecutor's actions could be termed "misconduct", that its actions were harmless and thus, do not form the basis for a reversal of Rector's conviction.
 {¶ 43} We will review these arguments using the standards set out above. In addition, we will not reverse the trial court's decision to deny the motion for mistrial unless it abused its discretion. State v.Treesh (2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749. The first step in analyzing these situations is normally determining whether the actions were improper. State v. Lott (1990), 51 Ohio St.3d 160, 165,555 N.E.2d 293. We will break from that general rule in this case. For the following reasons, we will not delve into correctness or appropriateness of the prosecution's, the trial court's, and Rector's counsel's actions because even if those actions were improper, Rector was not prejudiced by them. Thus, his arguments relating to the nolled count in the indictment are meritless.
 {¶ 44} In this case, Rector can only point to two possible references to the nolled count of the indictment, during opening statements and its direct examination of the child. In order to clearly explain how Rector was not prejudiced by these references, we must more fully describe the facts relating to this argument.
 {¶ 45} When the prosecutor made its opening statement, the trial court had not yet ruled on the motion to amend the indictment and the State had not yet nolled the first count. Accordingly, during her opening statement, the prosecutor informed the jury that Rector was charged with five counts of rape which occurred on five separate occasions. After the court denied the motion to amend the indictment and the State nolled the first count, the court informed the jury that the State voluntarily dismissed count one of the indictment.
 {¶ 46} During its direct examination of the child, the State asked a series of questions relating to each rape. For example, when dealing with each separate incident, the prosecutor established the approximate date of the incident, that the child was in her room, that Rector entered the room, and that he proceeded to rape her. After dealing with the four counts of rape, the prosecutor began to establish the facts relating to the nolled count. In doing so, it established the approximate date of the incident, that the child was in her room, and that Rector entered the room. However, the trial court stopped the line of questioning before the prosecution could elicit any testimony relating to any bad act on that date. It then gave a curative instruction which instructed the jury "to disregard any evidence of any additional alleged sexual conduct" besides that contained in the indictment.
 {¶ 47} As Rector did not object to the court's delay in ruling on the motion to amend the indictment or the prosecutor's remarks during opening statements, we must examine these for plain error. However, we must also review these incidents to see if Rector's counsel was ineffective for failing to object. We cannot see how there is even a reasonable probability that but for these statements the outcome of the trial would have been different. Indeed, we find it likely that when the trial court informed the jury that the State had voluntarily dismissed the first count in the indictment, Rector's case was strengthened in the eyes of the jury as it demonstrated the State could not prove a portion of the case it had originally brought to trial. Furthermore, any possible taint arising from the suggestion of a fifth bad act would have been overcome by the identical nature of the other four bad acts which were properly before the jury.
 {¶ 48} The same holds true for the actions complained of during direct examination of the child. Any indication in the manner the prosecutor was establishing facts that Rector had committed a fifth rape would have been overcome by the evidence that Rector had committed four other rapes. In addition, there were legitimate reasons for the prosecutor to engage in that line of questioning. For instance, having the child establish when she was last over at Rector's home bolsters Paul's testimony that the child told him about the rapes after she had been at Rector's home for a weekend. Furthermore, the trial court gave a curative instruction. "A jury is presumed to follow the instructions given to it by the trial judge." State v. Loza (1994), 71 Ohio St.3d 61, 75,641 N.E.2d 1082. Thus, any possible prejudice to the defendant is relieved by the trial court's curative instruction. LaMar at ¶¶ 170, 182.
 {¶ 49} Finally, we will not overturn Rector's conviction due to any alleged deficiency in the trial court's curative instruction. Although Rector may have desired an instruction which did not mention "any evidence of any additional alleged sexual conduct", his counsel acknowledged the instruction was satisfactory. The instruction was also correct. The jury should have disregarded all evidence of alleged sexual conduct which did not occur on the dates specified in the indictment.
 {¶ 50} In conclusion, we do not see how Rector was prejudiced by the actions of the prosecutor, trial court, and his counsel at trial in regard to the nolled count of the indictment. Accordingly, Rector's arguments relating to this count are meritless.
4. Improper Vouching
 {¶ 51} Rector argues that the prosecution improperly vouched for the credibility of its witnesses during opening statements and closing arguments and, therefore, committed misconduct. He also argues his counsel was ineffective for failing to object to this vouching.
 {¶ 52} "It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." State v. Williams (1997), 79 Ohio St.3d 1, 12,679 N.E.2d 646. In order for the prosecutor to "vouch" for the witness, the prosecutor's statements must imply knowledge of facts outside the record or place the prosecutor's personal credibility in issue. State v.Keene (1998), 81 Ohio St.3d 646, 666, 693 N.E.2d 246. Therefore, a prosecutor may argue that certain evidence tends to make a witness more or less credible, but may not state his own belief as to whether a witness is telling the truth. State v. Carpenter (1996), 116 Ohio App.3d 615,624, 688 N.E.2d 1090.
 {¶ 53} Rector claims the following two comments made during the State's opening statement improperly vouched for the credibility of a witness:
 {¶ 54} "[The victim]'s not going to tell you every time she's been around the defendant something horrible has happened to her. She makes the connection. She's going to tell you folks the truth."
 {¶ 55} "[The victim]'s going to come into this very big courtroom, sit on that witness stand, in front of Judge Martin, in front of all these attorneys, in front of you folks, the jurors, and most importantly in front of her stepfather Thomas Rector, and she's going to tell you what he did to her. She's going to be able to do that because she's a very brave little girl and she knows she's telling the truth * * *."
 {¶ 56} During the course of the trial defense counsel intimated the victim's father convinced her to make up the story for custody reasons. During closing arguments, the State made the following statement:
 {¶ 57} "[The victim's father] has custody of the child, so there is no reason why she would be making these things up."
 {¶ 58} Clearly, the prosecutor's comments during closing arguments did not vouch for the witness's credibility. Rather, these remarks were an attempt to illustrate why the witness has no motive to lie. The Ohio Supreme Court has explained that this type of argument is not improperly vouching for a witness and, therefore, is not misconduct. State v. Green
(2000), 90 Ohio St.3d 352, 373-374, 738 N.E.2d 1208. Instead, this is arguing facts which support the witness's credibility and responded to defense attacks on that credibility. Id.
 {¶ 59} As for the prosecutor's remarks during opening statements, it does not matter whether we conclude they were or were not improper because they did not render Rector's trial unfair. While the child was testifying, both parties had ample opportunity to establish or attack her credibility. Furthermore, the prosecutor's remarks were fleeting references made during opening statements rather than points of emphasis during closing arguments. Finally, the trial court in this case instructed the jury that opening statements and closing arguments are not evidence. These kinds of curative instructions protect a defendant's right to a fair trial. State v. Clayton (Feb. 21, 2002), 8th Dist. No. 79034, at 2. Thus, these statements, in and of themselves, did not render Rector's trial unfair. Rector's arguments to the contrary are meritless.
5. Other Prosecutorial Misconduct
 {¶ 60} In addition to the forms of prosecutorial misconduct addressed above, Rector argues the prosecution committed other forms of misconduct. He then argues the trial court committed misconduct by allowing these actions and that counsel was ineffective for failing to object to these actions. We conclude many of these other forms of "prosecutorial misconduct" were not actions taken by the prosecutor and Rector's arguments about those that were are frivolous. Therefore, we find the remainder of his arguments dealing with prosecutorial misconduct are meritless.
 {¶ 61} First, many of the "incidents" of prosecutorial misconduct Rector complains of simply can not be prosecutorial misconduct. For example, Rector cites to defense counsel's cross-examination of the victim as an example of prosecutorial misconduct. However, as the prosecutor did not do anything during that cross-examination, the prosecutor could not have committed misconduct. Furthermore, if this is intended to be an argument that the prosecutor committed misconduct in preparing the child as a witness, this argument is meritless for the reasons addressed above. Similarly, Rector cites to remarks the trial court made as examples of prosecutorial misconduct.
 {¶ 62} The remainder of Rector's arguments are so frivolous that they do not merit serious consideration. For example, the State made the following comment during opening statements: "It's not a case about DNA or gene profiling or gloves that fit or don't fit." Rector argues this statement "appear[s] to invite the jury to discriminate against [Rector] and circumvent the presumption of innocence", is "inexcusable", has "a tendency to mislead the jury", and is "deliberate, flagrant and not isolated."
 {¶ 63} Rector also claims the leading questions asked to the child constitute prosecutorial misconduct. However, as addressed above, there was nothing improper about the manner in which the prosecution examined the eight-year old witness. Likewise, Rector complains of what the prosecutor said in closing arguments. However, a brief review of the statements show the prosecutor doing the proper thing in that context, arguing the case. "In our adversarial system, prosecutors are not only permitted but also encouraged to argue fervently for conviction." Statev. Wilson (Apr. 19, 2002), 1st Dist. No. C-000670, at 6. A prosecutor does not commit misconduct when vouching for the integrity of the state's case or by arguing for a conviction to foreclose future criminal conduct. State v. Nolan (1992), 78 Ohio App.3d 564, 571, 605 N.E.2d 480. Thus, Rector's arguments relating to these incidents are meritless.
6. Other Trial Court Misconduct
 {¶ 64} Rector points to five other instances which he claims demonstrate the trial court committed misconduct in addition to those discussed which we will address in turn.
 {¶ 65} As an initial point, part of Rector's argument deals with "[m]edical records obtained through Rule 16 discovery but not utilized at trial by defense counsel." He argues the trial court somehow committed misconduct in regards to this evidence which was not utilized at trial and that counsel was ineffective for failing to introduce that evidence. We cannot overturn his conviction based upon this argument as these medical records were never offered into the trial court's record and, therefore, we cannot review whether they should have been introduced into evidence.
 {¶ 66} Rector also complains of the trial court's evidentiary ruling excluding a metric ruler from evidence. Both the nurse-practitioner which examined the victim and the doctor the defense called as a witness testified the victim had a vaginal opening of 3-4 millimeters and defense counsel has those witnesses demonstrate that distance on a ruler. At the close of evidence, Rector moved to enter that ruler into evidence. The trial court refused to allow that ruler into evidence, finding it was the significance of the size of the opening which was in question rather than the actual size and, therefore, the ruler was irrelevant. Rector claims the trial court erred because "exculpatory evidence demonstrating the extremely small diameter of the child's vagina was withheld from the consideration of the jury during its deliberations."
 {¶ 67} On appeal, Rector gives no reason explaining how the trial court's decision was error. Instead, he merely argues the trial court's decision "denied [counsel] the use of this otherwise admissible exhibit during closing argument by which he could have tangible reminded the jury and argued the significance of the opinion of his expert witness' testimony relative to the issues of penetration, rape and the credibility of the child's testimony and the State's case."
 {¶ 68} "The admission of evidence is normally within the discretion of the trial court, and the court's decision will be reversed only upon a showing of an abuse of that discretion." State ex rel. Elsassv. Shelby Cty. Bd. of Commrs. (2001), 92 Ohio St.3d 529, 533,751 N.E.2d 1032. In this case, the trial court did not abuse its discretion when it did not allow the ruler into evidence. As the trial court stated, the size of the opening was not at issue, but rather it was the significance of that size which was the issue before the jury. Placing the ruler into evidence and emphasizing how small the child's vaginal opening would do nothing but confuse and mislead the jury.
 {¶ 69} Counsel appears to be upset with the trial court's decision because it did not allow Rector to frame the issues before the jury in the manner he would have liked. However, this does not mean Rector was denied his right to a fair trial. Thus, this argument is meritless.
 {¶ 70} Rector's third argument is that the trial court erred when correcting a witness's statement. Rector's sole witness in his defense, Dr. Jon Marshall, did not examine the child but testified the results of the physical examination were inconsistent with the allegations. During direct examination of that witness, the following exchange occurred:
 {¶ 71} "Q. Now this case involved an allegation of multiple penetration, is that correct?
 {¶ 72} "A. Yes sir.
 {¶ 73} "Q: And,
 {¶ 74} "The Court: Excuse me, digital penetration.
 {¶ 75} "Mr. Campbell: Digital penetration. My apology your Honor.
 {¶ 76} "The Court: Well, I want the jury to understand that."
 {¶ 77} Rector cites no authority in support of his position that the trial court's actions were improper. In addition, the trial court's statement was truthful and appears to be to Rector's benefit. Thus, this argument is meritless.
 {¶ 78} Next, Rector complains of the trial court's decision to send a copy of the indictment to the jury along with the verdict forms. Rector did not object to the trial court's decision to send the indictment to the jury and, therefore, has waived that argument. Nevertheless, it appears the trial court did not abuse its discretion when sending the indictment to the jury. State v. McCarty (July 30, 1987), 10th Dist. Nos. 86AP-563, 87AP-186, at 6. In LaMar, the Ohio Supreme Court reaffirmed its previous decision holding the trial court has discretion in a criminal case to permit the jury to take the indictment to the jury room. Id. at ¶ 127, citing State v. Graven
(1977), 52 Ohio St.2d 112, 6 O.O.3d 334, 369 N.E.2d 1205, syllabus.
 {¶ 79} "Unless there is some objectionable notation on or prejudicial memorandum or affidavit attached thereto, it is the general rule that it is proper to permit the jury in a criminal case to take with it into the jury room the indictment or information, or that in any event no reversible error can be based on such permission, the trial court having at least a discretion in this regard." Graven at 114-115.
 {¶ 80} There are few Ohio cases addressing the limits of a trial court's discretion in allowing the indictment into the jury room. InGraven, the trial court instructed the jury it was not to consider the indictment as evidence and it was only to be used "to keep the counts straight." Id at 114. That indictment contained "only a detailed statement of the charges against the appellant." Id. The Ohio Supreme Court found the trial court did not abuse its discretion when it allowed this document into the jury room. See also McCarty. In other case, Ohio's appellate courts have found no error when the prosecutor read the indictment during opening statements. See LaMar at ¶ 127; State v.Begley (Dec. 21, 1992), 12th Dist. No. CA92-05-076.
 {¶ 81} In this case, the trial court gave no instruction stating the indictment was not evidence and was merely a tool to keep the counts straight. However, the trial court stated it was giving the jury the indictment "so [the jury] can compare the verdict form with the counts as alleged." Although Rector complains about this, it appears this is to his benefit as it prevented the jury from convicting him on the wrong counts. In addition, Rector complains the record does not speak as to whether the copy sent to the jury contained the nolled count. However, absent evidence to the contrary, appellate courts must presume regularity in the proceedings below and affirm its decision. State v. Bryant (Dec. 4, 2001), 7th Dist. No. 99 CA 135, at 4. Thus, we must presume that, if it would be error for the trial court to give a copy of the indictment without that first count redacted, that the trial court did the proper thing and redacted that count. Rector's argument that this act was misconduct is meritless.
 {¶ 82} Rector's final example of trial court misconduct arises out of remarks the trial court made to and about the defense's expert witness. Rector did not object to these comments during trial. Thus, this argument must be reviewed under the plain error standard of review.Wade, supra.
 {¶ 83} In order to understand Rector's complaint about the trial court's actions, we must place those actions in context. In this case, the victim was the State's only witness who could say in her own words what happened between her and Rector, thereby establishing many elements of the charged offenses. The State had the nurse-practitioner who examined the victim testify, but her testimony was inconclusive. She said she found no signs of trauma, but in her experience that was not inconsistent with these types of cases. In response, the defense placed Dr. Marshall on the stand. He did not examine the child and used the nurse practitioner's notes to render his opinion. He stated the type of abuse the child alleged would always produce some type of trauma and, therefore, the nurse-practitioner's findings were inconsistent with the charges. During the course of its examination of the State's witnesses, the defense also began to establish that there were custody issues between the victim's parents which may have given the child motivation to lie. Finally, the defense attempted to assail the victim's credibility during cross-examination by showing how she had prepared for her testimony with the prosecutor. Thus, an important part of the defense's case was impugning the credibility of the victim while relying on the credibility of its own expert witness.
 {¶ 84} During Rector's direct examination of Dr. Marshall, Rector's counsel, tried to locate a page within a numbered document. While counsel was doing so, the trial court made the following comment: "Well while you're hunting that, I've been waiting 30 years to make inquiry of Dr. Marshall, so will you get out the Dr. Marshall file and uh, I have a whole series of questions I'll ask. Oh, you're ready to go now?" Subsequently, both Rector and the prosecution had finished their examinations of Dr. Marshall. At this time, the trial court made the following remark: "As reluctant as I am to let Dr. Marshall off this easy, you can step down, check out the door with the Clerk and you're free to go."
 {¶ 85} Clearly, the trial court's comments are questionable and inappropriate at best. Furthermore, they could be read as impugning the credibility of the witness. However, it does not appear that, under a plain error standard of review, they amounted to misconduct. For one thing, it is not altogether clear that the trial court was, in fact, impugning the credibility of the witness. At oral argument the State insisted that it considered objecting to the comments when they were made because they were made in a jovial manner that demonstrated a friendly relationship between the trial judge and Dr. Marshall. The State's contentions are supported by Dr. Marshall's testimony that he grew up in Carrollton, Ohio. If the State's contentions are true, then it would be fair to say that the trial court's comments bolstered, rather than impugned, the witness's credibility. In addition, given the nature of the other testimony in the case, which we will address below when dealing with Rector's claim that his conviction was against the manifest weight of the evidence, we cannot conclude that but for the comments the outcome of the case would have been different.
 {¶ 86} For somewhat similar reasons, we also disagree with Rector's contention that counsel was ineffective for failing to object to those comments. This argument assumes that counsel's performance was somehow defective. However, Rector has not demonstrated how counsel's performance was defective. For instance, if the State's contention is correct and the trial court's comments bolstered Dr. Marshall's credibility, then counsel would have had no reason to object to those comments. Rector has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, we cannot find that counsel's assistance in this regard was ineffective. Rector's arguments that the trial court committed misconduct and that counsel was ineffective for failing to object to that misconduct are meritless.
7. Sufficiency of the Evidence
 {¶ 87} Rector contends that his conviction was based on insufficient evidence. His argument centers on the vagueness of the testimony concerning the dates on which each rape occurred. According to Rector, the State's inability to demonstrate that each rape occurred on the date specified in the indictment prevents any rational fact-finder from finding each essential element of the four charges was proven beyond a reasonable doubt. The State argues its evidence was sufficient to prove its case beyond a reasonable doubt. Rector made a timely Crim.R. 29 motion for acquittal and, therefore, has preserved this argument for appeal.
 {¶ 88} When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational person, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.E.2d 560; Statev. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. This is a question of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. Thus, an appellate court should not disturb the conviction unless it concludes reasonable minds could not reach the conclusion reached by the trier of fact. Jenks at 273.
 {¶ 89} Rector was charged with four counts of rape in violation of R.C. 2907.02(A)(1)(b) which provides as follows:
 {¶ 90} "No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Id.
 {¶ 91} Clearly, when viewing the evidence in the light most favorable to the State, we cannot conclude the State failed to introduce sufficient evidence to prove Rector guilty beyond a reasonable doubt. There is no question the child was less than thirteen years old and not Rector's spouse. Likewise, the child testified about numerous times when Rector would come in her room, digitally penetrate her, and perform oral sex on her. Rector's only serious argument regarding the sufficiency of the evidence is in regards to the time elements contained within each count of the indictment.
 {¶ 92} Each count of the indictment alleged a different rape on or about different times, October 1999, November 20 to November 27, 1999, December 24, 1999, and July 1 to August 30, 2000. The victim testified in March 2001 she first met Rector "the summer before" this past summer, i.e. the summer of 1999. She then testified the first rape occurred "sometime in the Fall" when "leaves were already on the ground" and her mother was "burning leaves". She testified the next incident occurred "sometime before Christmas * * * on a break [she] had from school." Her father testified he had custody of her for the Thanksgiving holiday, but that he probably dropped her off at her mother's for part of the holiday. The child testified the third incident occurred at Christmas time that year. Her father once again testified he had custody of her over Christmas, but that she spent a portion of time at her mother's home and, on December 24, 1999, Carrie Rector would have seen her daughter. Finally, the child testified Rector raped her during the summer of 2000.
 {¶ 93} The child did not give exact dates for each incident, but this is unnecessary since she only had to testify that the rapes took place on or about the dates alleged in the indictment. Her testimony sufficiently established this fact. A reasonable fact-finder looking at the evidence in the light most favorable to the State could conclude the evidence was sufficient to prove each element of the various offenses beyond a reasonable doubt. Thus, Rector's argument in regards to the sufficiency of the evidence is meritless.
8. Manifest Weight of the Evidence
 {¶ 94} In addition to arguing that his conviction was not supported by sufficient evidence, Rector argues it was against the manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Thompkins at paragraph two of the syllabus. When reviewing whether a conviction was against the manifest weight of the evidence, appellate courts must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v. Tibbetts (2001),92 Ohio St.3d 146, 163, 749 N.E.2d 226, quoting State v. Getsy (1998),84 Ohio St.3d 180, 193, 702 N.E.2d 866. In order to do this, appellate courts must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis sic.) Thompkins at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. "To reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus.
 {¶ 95} As stated above, this case turns on the reliability of the child's testimony. No witnesses other than the child testified from their own knowledge about any sexual conduct between the child and Rector. The State had no physical evidence supporting the child's testimony. The other witnesses who testified were, for the most part, intended to either support or attack the child's version of the facts. Therefore, the best way of describing whether or not the verdict was against the manifest weight of the evidence is to describe why the child's testimony is or is not credible.
 {¶ 96} In this case, the State called five witnesses while the defense called one. The first witness for the State was the police officer who first responded when the child's father called the police to report the alleged abuse. He did not question the child about the allegations. His testimony consisted of telling how he was called, how he contacted human services, and how he filed his report. Thus, his testimony did not establish any of the elements of the crimes Rector was charged with committing.
 {¶ 97} The State also called another police officer, Richard Taff, an investigator with the Carroll County Sheriff's Department. He was the officer which investigated the allegations against Rector and had investigated about 300 sexual abuse cases. He spoke with the child, the child's mother, and Rector. Rector denied the charges The remainder of Taff's testimony regarded the lack of physical evidence substantiating the child's claims.
 {¶ 98} The State next called Donna Abbott, the nurse-practitioner who examined the child at the hospital. She was the person in the hospital who saw children who were the alleged victims of abuse, had been in that position for eight years, and had been involved in approximately twenty-six hundred abuse cases. She knew the allegations against Rector were digital penetration and oral contact. She found no trauma to the child. She testified she would not expect to see any damage to the child from oral contact and that, in her experience, it was not unusual to have a lack of physical findings in these types of cases as the tissue could have healed without a scar.
 {¶ 99} The child's father testified about the history between he and the child's mother, how he came to be the residential parent of the child, and how he and the child's mother exercised their parenting time with the child. He also spoke of when the child would have been at the mother's home with Rector. He said the child was acting sad when the allegations of abuse arose, was fearful of Rector, but "feels safe now." However, he also testified he hadn't talked to her mother since the allegations arose and that the child was "a very sad child from the loss of a mother." In addition, he testified her grades and conduct in school have remained about the same from 1999 until the day of trial. He testified he never had any problems with Rector before he learned of the abuse. Defense counsel apparently tried to establish that the father may have had a motive to lie or influence the child to lie by virtue of the custody issue between he and the mother. However, it appears as if this was a non-issue since the mother originally was the residential parent until the two agreed that he should be named residential parent. Additionally, it appears the two parents had been working well together in sharing custody of the child.
 {¶ 100} The only other witness for the State was the child. As stated above, the child testified as to the time of the incidents and exactly what happened during those incidents. However, during trial the child did not volunteer much of this information. Instead, many of the specific details were introduced through the prosecution's leading questions. The details the child gave independent of those leading questions were, at best, vague. Additionally, defense counsel demonstrated how the child had problems recollecting the events and how the child had "remembered" events "by memorization" of the paper the prosecution gave her. That paper contained "things that [she] said to Mr. Taff". When judging the child's credibility based on these facts, it must be remembered that she was seven at the time of the incidents and eight at the time of trial.
 {¶ 101} The sole witness in Rector's defense was, as mentioned above, Dr. Marshall. He is a doctor who specializes in "all female medicine", and was recognized as an expert by the trial court. He did not examine the child, but reviewed the nurse-practitioner's chart and findings. As a result of his review of the chart, he concluded there was no penetration and that the findings were inconsistent with the allegations.
 {¶ 102} On cross-examination, the doctor became firmer in his beliefs, saying "there's no way this girl was raped" and that there was no way there was even slight digital penetration. The gist of the doctor's testimony is that one instance of penetration, no matter how slight, will cause trauma that will be discoverable by knowledgeable medical personnel. He also stated there would not necessarily be any trauma from the tongue. This testimony, of course, directly conflicts with that of the nurse-practitioner who testified a finding of no trauma was not inconsistent with these types of acts.
 {¶ 103} When looking at these facts as a whole, there would be a basis upon which the jury could have found Rector not guilty. For instance, it could have believed Dr. Marshall's testimony that the physical findings were totally inconsistent with the allegations and found this created reasonable doubt. However, we cannot say the jury "clearly lost its way." The nurse-practitioner, not the doctor, is the medical person who actually examined the child. She testified that what she saw was not inconsistent with the allegations. The eight year-old child's testimony was a bit vague, but that is understandable given her age. Furthermore, the record does not give any obvious reason to doubt her credibility. Even though the child looked at a paper to prepare for her testimony, it appears that paper reflected what she had told others. Thus, we cannot conclude that the jury's verdict was against the manifest weight of the evidence and Rector's argument to the contrary is meritless.
9. Other Ineffective Counsel Claims
 {¶ 104} In addition to the examples of ineffectiveness which we have already addressed, Rector claims his counsel was ineffective during the course of trial for a variety of other reasons as well. The State argues Rector has failed to demonstrate how, but for counsel's actions, the result of the trial would have been different.
 {¶ 105} Rector first argues trial counsel was ineffective for making a Crim.R. 29 motion for acquittal, but not arguing that motion before the trial court. As we have already addressed, the trial court properly denied that motion. Therefore, Rector was not prejudiced by counsel's failure to argue that motion to the trial court.
 {¶ 106} Rector next claims trial counsel was ineffective because their cross-examination of Taff and Abbott were to the detriment of their client. However, he gives absolutely no explanation of how it was detrimental to him. A review of counsel's cross-examination of Abbott gives no indication as to how that cross-examination was to his detriment. Additionally, after reviewing the cross-examination of Taff, the only possible explanation for Rector's claim is his counsel's decision to question Taff on certain investigative techniques. As a part of the questioning, counsel mentioned Rector had been incarcerated on a fourth DUI and that he had alcohol problems. However, it is clear that these references were an attempt to prove Rector did not confess as a result of Taff's investigative techniques and, therefore, were a part of defense counsel's strategy. Because this court must refrain from second-guessing counsel's strategic decisions, this argument is meritless.
 {¶ 107} Rector's final arguments relate to voir dire. He first states it was ineffective not to remove jurors English and Baker, but does not explain why this would be ineffective. He then complains that counsel's statements during voir dire were confused and seemingly not prepared, but once again offers no explanation for the statement. A review of the transcript does not reveal the basis for Rector's claim that counsel was confused and ill prepared for voir dire. At best, this argument could be termed a "hindsight views about how current counsel might have voir dired the jury differently." State v. Mason (1998),82 Ohio St.3d 144, 157, 694 N.E.2d 932. However, this does not rise to ineffective assistance of counsel. Id.; see also State v. Hartman
(2001), 93 Ohio St.3d 274, 300, 754 N.E.2d 1150.
 {¶ 108} In his statement of the facts within this brief, Rector gives some indication of why he thinks counsel was ineffective for not removing Baker from the jury. He claims that during voir dire Baker answered he would require the defendant prove something did not happen. Baker did make this statement. However, after making that statement he said he did not know the defense was not required to prove anything, understood the court would instruct him on the presumption of innocence and the standard of proof, recanted his statement that he would require the defense put on evidence, and stated he could follow the trial court's instructions. If a potential juror initially demonstrates an initial misunderstanding of the law, but after questioning agrees to accept the court's explanation of the law, then counsel is not ineffective in failing to excuse that juror. State v. Lindsey (2000), 87 Ohio St.3d 479,490, 721 N.E.2d 995. Thus, Rector's counsel was not ineffective for failing to take the action Rector now requests.
 {¶ 109} Rector's statement of the facts also indicate why he believed juror English should have been removed from the jury. During voir dire, she informed the court she was friends with both one of the assistant prosecutors in the case and one of Rector's defense counsel. Rector claims he wanted her removed, but that wish is not contained in the record. Furthermore, the juror said she had good relationships with both attorneys and her prior knowledge would not influence her one way or the other.
 {¶ 110} Appellate courts are very hesitant to find counsel was ineffective for removing or failing to remove prospective jurors form the jury as the selection of the jury is largely a matter of strategy and tactics. Lindsey at 489. Trial counsel is present to witness the demeanor and statements of the prospective jurors and, therefore, may have strategic reasons for acting as he or she did. Id. English said she had a good relationship with counsel for the prosecution and the defense and that those relationships would not influence her decision. Surely, defense counsel was in the best position to know whether someone they were friends with would be biased. Furthermore, it is impossible to say that, but for English's presence on the jury, the outcome of the case would have been different. Accordingly, we cannot conclude counsel was ineffective for failing to remove those potential jurors from the jury.
10. Cumulative Errors
 {¶ 111} Rector contends his conviction should be reversed because the cumulative errors in this case deprived him of a fair trial. In response, the State argues there were no errors which could accumulate and, therefore, this assignment of error is meritless.
 {¶ 112} Although a particular error might not constitute prejudicial error in and of itself, a conviction may be reversed if the cumulative effect of the errors deprives appellant of a fair trial, despite the fact that each error individually does not constitute cause for reversal. State v. DeMarco (1987), 31 Ohio St.3d 191, 31 OBR 390,509 N.E.2d 1256, paragraph two of the syllabus. However, the doctrine of cumulative error is not applicable where appellant fails to establish multiple instances of harmless error during the course of the trial.State v. Garner (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623. A defendant claiming cumulative error must make "a persuasive showing of cumulative error." State v. Sanders (2001), 92 Ohio St.3d 245, 279, 750 N.E.2d 90. Rector makes no persuasive showing of cumulative error which occurred at trial. Thus, this argument is meritless.
11. Sexual Predator Adjudication
 {¶ 113} Rector's final argument contends the trial court erred in classifying him as a sexual predator and that his counsel was ineffective in those sexual predator proceedings. Within this argument, Rector claims he was not provided adequate notice of his sexual predator hearing. The State argues Rector did not complain about the inadequacy of his notice and, therefore, he has waived all but plain error.
 {¶ 114} R.C. 2950.09(B)(1) provides as follows:
 {¶ 115} "[T]he judge who is to impose sentence upon the offender shall conduct a hearing to determine whether the offender is a sexual predator. The judge shall conduct the hearing prior to sentencing and, if the sexually oriented offense is a felony, may conduct it as part of the sentencing hearing required by section 2929.19 of the Revised Code. The court shall give the offender and the prosecutor who prosecuted the offender for the sexually oriented offense notice of the date, time, and location of the hearing." Id.
 {¶ 116} "The notice requirement for sexual offender classification hearings under R.C. 2950.09(B)(1) is mandatory." State v. Gowdy (2000),88 Ohio St.3d 387, 727 N.E.2d 579, syllabus. Notice is required so the parties have an adequate opportunity to gather supporting evidence and testimony in preparation for the hearing. State v. Dawson, 8th Dist. No. 80035, 2002-Ohio-2142, ¶ 47. This is true even though R.C.2950.09(B)(2) requires trial courts to conduct those hearings prior to or concurrent with the sentencing hearing for the underlying crime. SeeGowdy. Thus, in Gowdy, the defendant was convicted of two counts of rape and the trial court set the matter for a sentencing hearing without mentioning a sexual predator classification hearing. However, the trial court proceeded with both the sentencing hearing and the sexual predator determination on the previously set date and the defendant did not formally object to the lack of notice. The Ohio Supreme Court found "it is imperative that counsel have time to adequately prepare for the hearing." Id. at 398. "Notice of the sentencing hearing is not sufficient notice of the sexual offender classification hearing." Id. at 399. "To hold otherwise would make the hearing perfunctory in nature and would deny defendant the rights guaranteed him under the statute." Id. at 398. Thus, the lack of notice constitutes plain error which requires the defendant's classification as a sexual predator be vacated and the matter remanded to the trial court for a sexual offender classification hearing with proper advance notice of the hearing issued to the parties. Id. at 398-399.
 {¶ 117} In this case, Rector does not dispute the fact that he was given notice of his sexual predator hearing. Rector argues the notice given him was inadequate. After the jury returned its verdict, the trial court set sentencing for April 5, 2001 at 9:30 A.M. In an April 5, 2001 judgment entry time-stamped 8:43 A.M., the trial court set the sexual predator hearing for April 5, 2001 at 9:30 A.M. as well. Rector argues he was given notice of the sexual predator hearing a mere forty-seven minutes before that hearing which did not provide him an opportunity to prepare, testify, present evidence, or call and examine witnesses and expert witnesses at the sexual predator hearing.
 {¶ 118} Clearly, given the Ohio Supreme Court's decision inGowdy, the notice given an offender of a sexual predator hearing must be adequate. State v. Linton (Mar. 1, 2002), 11th Dist. Nos. 2000-P-0059, 2000-P-0129. In Linton, the first indication in the record the offender received notice of the sexual predator hearing was a pro se motion filed six days before the hearing. Furthermore, there was no indication in the record when counsel received notice of the hearing. The Eleventh District found this notice inadequate and that lack of adequate notice was plain error. Similarly, in State v. Nixon (Apr. 25, 2001), 9th Dist. Nos. 00CA007638, 00CA007624, the trial court gave the offender notice of the sexual predator hearing the same day it held that hearing. The appellate court found this was error.
 {¶ 119} In this case, the trial court gave Rector notice of the sexual predator hearing the same day it held the hearing. Without question, this is inadequate. There is simply no way Rector could have adequately prepared for that hearing. Thus, regardless of the nature of the evidence against him, we must vacate the trial court's determination that Rector was a sexual predator. This argument is meritorious.
 {¶ 120} Given our resolution of this issue, we will not address Rector's other arguments concerning his sexual predator classification or counsel's effectiveness during that proceeding.
 {¶ 121} For the reasons described above, we conclude Rector's attacks upon the propriety of his conviction raised in assignments of error one through six, eight and nine are meritless and we affirm his conviction. However, we conclude Rector's seventh assignment of error is meritorious, and reverse the trial court's classification of Rector as a sexual predator because he was not given adequate notice of his sexual predator hearing. Accordingly, this matter is remanded for a sexual offender classification hearing with proper advance notice of the hearing issued to the parties.
Vukovich, P.J., and Donofrio, J., concur.
 APPENDIX Assignments of Error {¶ 122} "The Defendant-Appellant was deprived of due process, equal protection of the law, [sic] a fair trial and impartial jury by the prejudicial misconduct of the trial court."
 {¶ 123} "The trial court's failure to sustain Defendant-Appellant's motion for a mistrial and to give an adequate curative instruction to the jury was an abuse of discretion which denied Defendant-Appellant a fair trial, impartial jury and due process of law."
 {¶ 124} "The Defendant-Appellant was deprived of due process, equal protection of the law, a fair trial and impartial jury by prosecutorial misconduct."
 {¶ 125} "The Defendant-Appellant was deprived of due process of law by the effect of the trial court's ruling denying Defendant-Appellant's continuing objection to the testimony of Brittany Vogley ascertained by leading questions."
 {¶ 126} "The Defendant-Appellant was deprived of due process of law by the effect of the trial court's ruling denying Defendant-Appellant's motion to strike the testimony of Brittany Vogley."
 {¶ 127} "The Defendant-Appellant was denied a fair trial, right to counsel, due process and equal protection of the law by ineffective assistance of counsel during the trial and sexual predator adjudication hearing."
 {¶ 128} "The trial court erred as a matter of law and denied Defendant-Appellant due process of law when the trial court, pursuant to ORC 2950.09, failed to: (1) give Defendant-Appellant reasonable notice of the date, time and location of the sexual predator adjudication hearing; (2) give Defendant-Appellant a reasonable opportunity to prepare, present evidence, testify, call and examine witnesses and expert witnesses at the sexual predator adjudication hearing; (3) afford Defendant-Appellant the right to be represented by effective assistance of counsel at the sexual predator adjudication hearing; (4) determine by clear and convincing evidence whether Defendant-Appellant is likely to engage in the future in one or more sexually oriented offenses; and, (5) rely only on the evidence and testimony adduced offered [sic] at the sexual predator adjudication hearing when making the court's determination whether Defendant-Appellant is a sexual predator."
 {¶ 129} "The Defendant-Appellant was deprived of due process, equal protection of the law, a fair trial and impartial jury by the effect of the cumulative errors in the trial of Defendant-Appellant's case."
 {¶ 130} "The trial court erred to the prejudice of the Defendant-Appellant when it entered judgment of conviction on the second, third, fourth, and fifth counts of the indictment, where such convictions were based on insufficient evidence and were against the manifest weight of the evidence."